**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**SUSAN D. MARASCALO, as Executrix**                                               **PLAINTIFF**
**for the Estate of Elizabeth Ann Deloach**

**V.**                                                                                                                **NO. 4:18-CV-141-DMB-RP**

**ALLSTATE VEHICLE AND**
**PROPERTY INSURANCE COMPANY**                                                    **DEFENDANT**

**ORDER**

This insurance dispute action is before the Court on Allstate Vehicle and Property Insurance Company's motion to dismiss. Doc. #65.

**I**
**Procedural History**

On June 13, 2018, Elizabeth Ann Deloach filed a complaint in the Circuit Court of Grenada County, Mississippi, against Allstate Vehicle and Property Insurance Company and Patrick Thimmes regarding the denial of an insurance claim on her cabin. Doc. #2 at 1. Allstate, invoking diversity jurisdiction, removed the case to the United States District Court for the Northern District of Mississippi on July 12, 2018. Doc. #1 at 2.

On July 18, 2018, Deloach filed a motion to remand. Doc. #10. One week later, Allstate filed a motion to dismiss the claims against it pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Doc. #13. The next day, Thimmes filed a motion to dismiss the claims against him. Doc. #16. On February 20, 2019, after full briefing on the motions, the Court denied Deloach's motion to remand, severed and remanded the claims against Thimmes as improperly joined, and denied Thimmes' motion to dismiss without prejudice. Doc. #29. Deloach moved for reconsideration of the February 20 order, which the Court denied. Docs. #33, #39.

On March 29, 2019, the Court granted Allstate's motion to dismiss but allowed Deloach fourteen days to seek leave to amend her complaint. Doc. #40 at 9. Deloach passed away the same day the Court granted the motion to dismiss. *See* Doc. #43. Ultimately, Susan D. Marascalo, the executrix of Deloach's estate, was substituted as the plaintiff in this case. Doc. #49. Marascalo, with leave of the Court, filed an amended complaint on August 8, 2019.[1] Doc. #61. Allstate answered the amended complaint, Doc. #64, and then filed a motion to dismiss certain counts, Doc. #65. The motion to dismiss is fully briefed. Docs. #70, #74.

**II**
**Standard**

Although Allstate's motion was filed as a Rule 12(b)(6) motion to dismiss, the document was filed after Allstate's answer and, therefore, is properly construed as a motion for judgment on the pleadings. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Regardless, a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings are assessed under the same standard. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). With both, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quotation marks omitted).

**III**
**Factual Allegations**

In June of 2016, Elizabeth Ann Deloach contacted Patrick Thimmes, an Allstate insurance agent, in order to purchase "insurance against loss on a cabin and its contents located on her farm property in Tallahatchie County, Mississippi." Doc. #61 at ¶ 5. Thimmes procured for Deloach Allstate insurance policy number 810 476 435. *Id.*

---

[1] The caption of the amended complaint lists "The Estate of Elizabeth Ann Deloach" as the plaintiff. *See* Doc. #61. However, the order granting substitution formally substituted as the plaintiff "Susan D. Marascalo, as Executrix for the Estate of Elizabeth Ann Deloach." Doc. #49. The caption of this order follows the caption of the substitution order.

The policy included two categories of protection: (1) "Dwelling Protection," also known as "Coverage A;" (2) "Other Structures Protection," also known as "Coverage B;" and (3) "Personal Property Protection," also known as "Coverage C." Doc. #61 at PageID #632, #638. Coverage A provided protection for "[y]our dwelling, including attached structures." *Id*. at PageID #632. Coverage B covered "[s]tructures at the address … separated from your dwelling by clear space." *Id*. Coverage C covered "[p]ersonal property owned or used by an Insured person anywhere in the world" but limited the coverage to 10% when such policy "is located away from the residence premises." *Id*. at PageID #638.

The policy defined "You or your" as the Named Insured, which in this case was Deloach, and "Dwelling" as "the single-family building structure, identified as the insured property … where you reside and which is principally used as a private residence." *Id*. at PageID ## 629–30.

Deloach did not reside at the cabin. *Id*. at ¶ 6. At the time Deloach purchased the policy, Carl Marascalo, her former son-in-law, resided at the cabin. *Id*. The fact of Carl's residence at the cabin was known by both Thimmes and an Allstate appraiser who visited the property. *Id*.

"[A] few days prior to August 15, 2016," Carl moved the cabin from Deloach's property and destroyed the foundation and piers upon which the cabin previously rested. *Id*. at ¶ 7. Deloach reported the theft to the police and the loss to Allstate on or about August 16, 2016. *Id*. at ¶ 8. According to the amended complaint, "Allstate negligently and intentionally procrastinated in … consideration of [the] claim." *Id*. at ¶ 9. While Allstate initially construed the claim as only for loss of the foundation, on February 22, 2017, Deloach's counsel "clarified in writing that the demand was for the full loss of the cabin … in addition to contents coverage." *Id*. Throughout the claims process, Allstate continued to draft Deloach's account for coverage of the property. *Id*. at ¶ 10.

On April 14, 2017, Allstate advised Deloach that the policy would be cancelled on May 25, 2017, due to "a substantial change or increase in hazard in the risk … originally accepted …." *Id*. at ¶ 11. Approximately a month later, on May 17, 2017, Allstate denied Deloach's claim because the loss under the policy was not sudden and accidental and because she did not reside at the property. *Id*. at ¶ 12. Sometime later, Allstate attempted to collect payment under the cancelled contract. *Id*. at ¶ 13.

## IV
## Analysis

The amended complaint asserts four claims: (1) estoppel (Count I); (2) "Breach of Contract and Bad Faith" (Count II); (3) negligence (Count III); and (4) "Punitive Damages," which appears to be a claim for bad faith (Count IV). *See* Doc. #61. Allstate's motion seeks dismissal of all claims except for the breach of contract claim to the extent it is premised on coverage for the loss of the contents of the cabin. Doc. #65 at 4.

### A. Estoppel

Mississippi law[2] recognizes the doctrine of estoppel "as the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 740 (Miss. 2019). Estoppel regarding performance of a contract may arise from a promise related to an existing fact (equitable estoppel) or a promise of future performance (promissory estoppel). *Id*. at 741.

In her amended complaint, Marascalo alleges that because Allstate issued "a policy

---

[2] The law of the forum state—in this case, Mississippi—governs the substantive issues in this diversity case. *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018).

4

insuring the cabin and contents with full actual knowledge of the true facts of Mrs. Deloach's residency … Allstate intentionally misrepresented to … Deloach that she had acquired the coverage she requested." Doc. #61 at ¶ 20. Marascalo thus contends that "Allstate is estopped from claiming that because … Deloach did not actually reside in the cabin there is no coverage for her loss …." *Id*. at ¶ 21. This claim, which depends on an alleged promise of an existing fact (the nature of coverage provided) sounds in equitable estoppel.

> The elements of equitable estoppel are
>
> Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

*Gulf Coast*, 273 So. 3d at 740.

Allstate argues that Deloach's claim fails because oral promises cannot supersede the terms of the contract and "[t]he only promise Allstate made was to abide by the terms of the contract."[3] Doc. #66 at 10. It also contends that the claim fails because estoppel cannot be used to expand the coverage of an insurance policy. *Id*. Marascalo's response is somewhat confusing but seems to rely on two separate arguments: (1) the provision of the policy in response to her request for coverage for the cabin amounted to a promise to cover the cabin; and (2) the policy itself promised to cover the cabin. *See* Doc. #71 at 3–6. Marascalo's response does not address the substantive argument that estoppel may not be used to expand the coverage of an insurance contract.

Mississippi law is clear that "although an insurance company may be equitably estopped from insisting on a forfeiture of the policy, the doctrines of waiver and estoppel may not be used

---

[3] Allstate improperly characterized Deloach's claim as for promissory estoppel but the argument, which goes to whether a misrepresentation was made, applies with equal force to an equitable estoppel claim.

to reform an insurance contract to create a liability for a condition excluded by the specific terms of the policy." *Fishel v. Am. Sec. Life Ins. Co.*, 835 F.2d 613, 615 (5th Cir. 1988) (collecting cases). However, while estoppel and waiver "cannot be used to extend the coverage of an insurance policy or create a primary liability, [they] may … affect rights reserved" in an insurance policy. *Id*. The impact of this rule is "difficult to defend as well as to apply." MISS. INS. LAW AND PRAC. § 7:5 (2019).

In *Travelers Fire Ins. Co. v. Bank of New Albany*, the Mississippi Supreme Court considered the doctrine of waiver in a case where an insured obtained fire insurance for a particular mill. 146 So. 2d 351, 352 (Miss. 1962). The policies at issue included the following provision:

> Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring
>
> (a) while the hazard is increased by any means within the control or knowledge of the insured; or
>
> (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days ….

*Id*. Approximately a year after issuance of the policy, the mill became vacant. *Id*. The insurer was aware of the vacancy but renewed the relevant policies the following year. *Id*. Ultimately, the mill was destroyed by fire and coverage was denied under the vacancy provision. *Id*. at 352–53.

The *Travelers* court held that the doctrine prohibiting expansion of coverage did not prevent application of waiver because "waiver of the vacancy or unoccupancy clause here does not extend coverage of the policies to property not covered by them. The mill was the property described in the contract of insurance." *Id*. at 354. Put differently, the use of waiver or estoppel did not expand coverage as defined by the policy because the vacancy provision was only a "condition of forfeiture of coverage" rather than a provision defining coverage. *See Charles*

6

*Stores, Inc. v. Aetna Ins. Co.*, 428 F.2d 989, 992 (5th Cir. 1970). Thus, while waiver or estoppel may be used to prevent the *loss* of defined coverage (as in *Travelers*), the doctrines may not be used, for example, to expand an employee insurance policy to a non-employee,[4] or to a pre-existing condition expressly excluded from coverage.[5] Accordingly, the applicability of estoppel to Marascalo's claim depends on whether the residency requirement is properly defined as a definition of coverage or as a condition of forfeiture of coverage.

Despite Marascalo's arguments to the contrary,[6] there can be no serious dispute that the policy, which defined its coverage by specific reference to Deloach's "dwelling," omitted from coverage a home which was not Deloach's residence. Indeed, the policy defines "[i]nsured premises" as "the residence premises." Doc. #61 at PageID #629. Thus, unlike the mill in *Travelers*, the cabin generally was not the "subject" of the policy. In this sense, the residency requirement goes to the scope of coverage and, therefore, may not be waived. Nor can there be any dispute that, as alleged in the amended complaint, Deloach did not reside at the cabin. Given this, Marascalo may not rely on estoppel to abrogate the policy's residency requirement. The estoppel claim will, therefore, be dismissed.

### B. Breach of Contract for Loss of Dwelling

"A breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quotation marks omitted). Allstate seeks dismissal of Marascalo's breach of contract claim premised on the failure to pay the loss associated

---

[4] *Fishel*, 835 F.2d at 616.

[5] *Pace v. Fin. Sec. Life of Miss.*, 608 So. 2d 1135, 1139–40 (Miss. 1992).

[6] Marascalo's arguments are confusing but seem to rely on the assertion that the cabin was Deloach's "secondary residence." Doc. #71 at 4–6. This is unrelated to the applicability of estoppel. Furthermore, as discussed below, the contention is without merit.

with the cabin (as distinct from the cabin's contents) because there was no obligation to pay arising under the policy. Doc. #66 at 5–6. Marascalo responds that Allstate was obligated to cover the loss of the cabin because it was her secondary residence. Doc. #71 at 4–6.

As explained in this opinion, the policy only covered a dwelling which was Deloach's residence. To be sure, the policy, which contained a secondary residence provision, clearly contemplated the possibility that a person may have more than two residences. *See generally Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 874 (Miss. 1995) ("[A] person may have multiple residences simultaneously."). However, at a minimum, a residence requires some habitation. *Id*. at 875. Marascalo has alleged no facts which would suggest she ever resided at the cabin. To the contrary, the amended complaint alleges that the cabin "was not where the Plaintiff resided …." Doc. #61 at ¶ 6. Accordingly, the breach of contract claim premised on a failure to pay for the loss of the dwelling will be dismissed.

### C. Negligence

"The elements of a prima facie case of negligence are duty, breach, causation, and damages." *Chaffee ex rel. Latham v. Jackson Pub. Sch. Dist.*, 270 So. 3d 905, 907 (Miss. 2019).

The amended complaint alleges:

> Allstate negligently issued a policy of insurance containing provisions providing it with an "escape" should a loss be incurred. Allstate and its agent owed Mrs. Deloach a duty to provide the correct coverage that she requested and Allstate breached that duty by either negligently issuing a policy omitting the requested coverage, or negligently interpreting the policy provisions to avoid payment of the claim.

Doc. #61 at ¶ 37. Thus, Marascalo alleges two theories of negligence—one based on the issuance of the policy and one based on the interpretation of the policy. Allstate argues that the claim premised on issuance must fail because Deloach had a duty to read the policy, Doc. #66 at 12–13, and that it otherwise properly interpreted the policy, *id*. at 5–7.

First, as mentioned above, Marascalo has alleged no facts which would suggest a breach of the actual terms of the contract. It follows, therefore, that Marascalo cannot show Allstate misinterpreted the terms of the contract, much less that it did so negligently. Accordingly, the negligence claim premised on interpretation of the policy will be dismissed.

Second, a plaintiff may not assert a negligence claim based on procurement of an insurance policy when the alleged negligence would have been apparent from the face of the insurance policy. *Mladineo v. Schmidt*, 52 So. 3d 1154, 1156 (Miss. 2010). This is so because an insured has a duty to read insurance documents. *Id*. at 1164. To the extent the insurance policy clearly included a requirement that the cabin be Deloach's residence, Marascalo may not advance a claim premised on the inclusion of such a term. The negligence claims will be dismissed.

### D. Bad Faith

"In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Liberty Mut. Ins. Co. v. McKneely*, 862 So.2d 530, 533 (Miss. 2003). "The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." *Id*. The tort reaches bad faith delays in payments of valid claims. *Id*.

Allstate argues that the bad faith claim premised on denial of the dwelling coverage must fail because Allstate had a reason for denying the claim. Doc. #66 at 11–12. It further contends that while "[t]he amended complaint mentions a contents claim in passing … there are no allegations that Deloach submitted a contents claim or the reasons a contents claim was allegedly denied." *Id*. at 12. Marascalo responds that she has satisfied the elements of a bad faith claim by

9

> alleging knowing sale of insurance known to the seller to provide no coverage and profiting from the endeavor, denying the single claim filed under the policy on first one basis (the loss was not sudden or accidental) and then another (Ms. Deloach did not reside in the cabin), continuing to collect premiums and perpetuating the fraud. This is bad faith in its purest form, and Allstate's motion to dismiss should be overruled.

Doc. #71 at 7–8.

As argued, Marascalo does not appear to advance a bad faith claim based on the actual claim decision.[7] Marascalo appears to raise a bad faith claim based on the totality of Allstate's conduct in issuing and collecting premiums on an allegedly worthless policy. This claim also fails.

First, it is simply incorrect that the policy provided no coverage. As explained above, in addition to the residential coverage, the policy provided coverage for Deloach's personal property.

Furthermore, "[i]n Mississippi, an insurer is under no duty to insure every applicant and is in fact free to state the terms upon which insurance may be obtained." *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 995 (5th Cir. 2001). Thus, an insurer does not act in bad faith when it "deliver[s] a policy that differ[s] materially from the one requested …." *Id.*

Finally, contrary to the argument in her brief, Marascalo's amended complaint does not appear to allege that Allstate changed the basis for the denial at any point. Even if it had, the pleading alleges no facts to suggest the change was improper. Similarly, the amended complaint does not allege how or why the continued collection of premiums (or the attempt to collect on missing premiums after cancelation) was improper, much less in bad faith. Indeed, to the extent the policy indisputably provided valid coverage for Deloach's personal belongings, collection of

---

[7] While the amended complaint alleges Allstate wrongfully delayed its investigation, a bad faith delay claim will not lie in the absence of a "valid claim" for payment. *McKneely*, 862 So.2d at 534. To the extent the bad faith delay claim is premised on denial of the dwelling claim, it must fail for the reasons above. Additionally, Marascalo did not respond to Allstate's arguments regarding her ability to state a bad faith cause of action premised on the contents claim. To the extent such a claim is asserted in the amended complaint, it is deemed abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim by failing to address arguments raised in motion to dismiss).

10

contracted-for premiums for such coverage was indisputably proper.  Accordingly, Allstate is entitled to dismissal of the bad faith claims.

## V
## Conclusion

Allstate's motion to dismiss [65] is **GRANTED**.  All claims in the amended complaint, with the exception of the breach of contract claim premised on an alleged contents claim, are **DISMISSED**.

**SO ORDERED**, this 3rd day of January, 2020.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
